IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DARNELL RICHMOND, #R30884,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 20-cv-143-RJD |
| ) | |
| **WEXFORD HEALTH SOURCES, INC.,** ) | |
| **ET AL.,** ) | |
| ) | |
| **Defendants.** ) | |

**ORDER**

**DALY, Magistrate Judge:**

This matter comes before the Court on the Motion for Summary Judgment filed by Defendants Wexford Health Sources, Inc., and Mohammed Siddiqui, M.D. (Docs. 65 and 66). Plaintiff filed a Response (Doc. 70). As explained further, Defendants' Motion is GRANTED.

### Background

Plaintiff is an inmate of the Illinois Department of Corrections ("IDOC") and filed this suit pursuant to 42 USC §1983. In his Complaint, Plaintiff alleged that he injured his back in February 2019 at Menard Correctional Center ("Menard") and Defendants Wexford Health Sources, Inc., Dr. Siddiqui, and Nurse Practitioner Zimmer were deliberately indifferent to his pain (Doc. 1).[1] After the Court conducted a threshold review pursuant to 28 U.S.C. §1915A and resolved the issue of administrative remedy exhaustion, Plaintiff's case proceeded on one Eighth Amendment claim against Dr. Siddiqui and Wexford for violating his Eighth Amendment rights (Doc. 54). Nurse Practitioner Zimmer was dismissed for Plaintiff's failure to exhaust his administrative remedies against them (*Id*.).

---

[1] Wexford provides health care to inmates within the IDOC.

**Plaintiff's deposition testimony**

Plaintiff was asked to describe the incident that injured his back. He testified that he was sitting in the law library at a chair with an attached desk when "the whole chair broke on me, all the rods and screws hit my back and I fell backwards and hit my head on the book shelf. It knocked me out unconscious, so they called the paramedics" (Doc. 66-3, p. 22). After receiving treatment at the hospital, Plaintiff returned to Menard with a paper that contained instructions from the doctor at the hospital (*Id.*, p. 48). Those instructions "told [Dr. Siddiqui] to give [Plaintiff] a hot pack, an ice pack, and the prescription" (*Id.*, p. 51).

Soon after Plaintiff injured his back, he saw a nurse who told him that "Wexford deliberately understaffs" (*Id.*, p. 43-44). This same nurse had previously made a similar statement to Plaintiff regarding Wexford understaffing, and also told him that Wexford only prescribes Tylenol and Ibuprofen (*Id.*, p. 44).

Regarding the medical treatment for his injuries at issue in this case, Plaintiff testified that he received physical therapy but it "wasn't working" (*Id.*, p. 20). He also received a steroid shot that 'messed it up worse" (*Id.*). He had to climb quite a few steps to his gallery, but Dr. Siddiqui and other staff would not give him a low-gallery permit (*Id.*, p. 29). Two years after the injury, a nurse practitioner prescribed a muscle relaxer to Plaintiff ((*Id.*, p. 47, 50). Plaintiff still experiences back pain (*Id.*, p. 49).

**Undisputed Material Facts**

The following facts, presented in Plaintiff's medical records and an affidavit from Dr. Siddiqui, are not disputed by Plaintiff in his Response to the Motion for Summary Judgment, nor his deposition testimony. At 10:15 a.m. on February 21, 2019, a nurse practitioner called for an ambulance to take Plaintiff to Chester Memorial Hospital after Plaintiff fell from a chair in the library (Doc. 66-1, p. 4). At the Emergency Room, Plaintiff underwent a CT scan of his cervical spine, lumbar spine, and head (*Id.*, p. 29-34). He underwent an x-ray of his thoracic spine (*Id.*,

p. 35). The ER physicians diagnosed him with cervical sprain and a low lumbar strain and prescribed 30 tablets of Naprosyn, 500 mg (*Id*., p. 38; Doc. 66-2, ¶7). Naprosyn is a non-steroidal anti-inflammatory medicine used for pain relief and to treat inflammation; it is available over-the counter or as a prescription (Doc. 66-2, ¶¶11, 12). Plaintiff returned to Menard at 1:30 p.m. and a nurse noted "no md/np available" and "follow up with MD/NP in 5 days" (Doc. 66-1, p.3).

A registered nurse saw Plaintiff on February 25, 2019 (*Id*.). She noted that he was seen on nurse sick call for back and neck pains related to his fall on February 21, 2019 and she "advised inmate that he will be followed up with medical doctor/nurse practitioner soon" (*Id*.). She gave him Ibuprofen, 200 mg (*Id*.).

Plaintiff saw Dr. Siddiqui on February 27, 2019 (Doc. 66-1, p. 5). Dr. Siddiqui prescribed 60 tablets of Tylenol, 325 mg (Doc. 66-2, ¶13). Dr. Siddiqui states in his affidavit that 60 tablets of Tylenol, 325 mg is an appropriate and customary substitution for 30 tablets of Naprosyn, 500 mg for treatment of pain associated with minor sprains and strains (*Id*., ¶14). Dr. Siddiqui further states that narcotics are not indicated as an appropriate treatment to treat pain associated with a minor sprain or strain (*Id*., ¶14). Treatment for sprains and strains, according to Dr. Siddiqui, includes resuming activity of the affected area within a few days of injury (*Id*., ¶18) . Neither heat nor ice is medically indicated six days after a sprain or strain causing injury (*Id*., ¶¶16, 17).

Plaintiff saw Nurse Practitioner Zimmer on April 10, 2019 (Doc. 66-1, p. 6). She noted that he was seen for headache and neck pain from the February 21, 2019 fall. (*Id*.). In her assessment, she wrote "malingering" (*Id*.). In her plan, she wrote "inmate to take Tylenol for headache. Informed would prescribe x3 months then if needed can buy commissary. Inmate demanding something stronger" (*Id*.). A nurse practitioner saw Plaintiff again in October 2019 and noted that he had "ongoing headaches, muscle stiffness, back ache since fall in Feb[ruary]" (Doc. 66-1, p. 13) In her Plan, she wrote "Motrin 600 mg" and "PT to evaluate lower back pain"

(*Id*.).

## Legal Standards

***Summary Judgment Standard***

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

## Discussion

Plaintiff contends that Dr. Siddiqui and Wexford violated his Eighth Amendment right to be free from cruel and unusual punishment. The Supreme Court recognizes that "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To prevail against Dr. Siddiqui, Plaintiff must establish first that the pain from his fall was an "objectively serious medical condition" and second, that Dr. Siddiqui subjectively knew that the pain posed a "substantial risk of serious harm" to Plaintiff, and Dr. Siddiqui disregarded that risk. *Stocktown v. Milwaukee Cty*, 44 F. 4th 605, 614-15 (internal citations and quotations omitted). For Wexford to be liable, Plaintiff must demonstrate that a

Wexford policy caused the deprivation of his Eighth Amendment right. *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 789 (7th Cir. 2014); *see also Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658 (1978).

**Dr. Siddiqui**

Neither negligence nor medical malpractice constitutes deliberate indifference; instead, it is "something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Stockton*, 44 F. 4th at 615; *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016) (internal citations and quotations omitted). On the record before the Court, there is no genuine issue of material fact regarding whether Dr. Siddiqui disregarded a substantial risk of serious harm to Plaintiff on February 26, 2019. The record reflects that Plaintiff received a diagnosis from the emergency room physician after a series of tests were performed, and that Dr. Siddiqui rendered treatment to Plaintiff based on that diagnosis and the results of the testing.

The Court has reviewed the paper that accompanied Plaintiff back to the prison from the emergency room (Doc. 66-1, p. 14-28; Doc. 66-3, p. 25, 30). Though Plaintiff describes the paper as "instructions" for his care, it contains nothing more than suggestions for treating back or neck sprains, like ice or heat packs. To the extent that the suggestions are construed as specific to Plaintiff (and not just a pamphlet given to every patient who presents to the emergency room with similar injuries), Dr. Siddiqui gives a reasonable explanation for why ice or heat packs were not provided to Plaintiff. The Eighth Amendment does not entitle Plaintiff to specific care. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954 (7th Cir. 2019) (internal citations and quotations omitted).

Dr. Siddiqui also provides an explanation for why he ordered a particular dosage of Tylenol for Plaintiff as a substitute for Naprosyn, and a prison doctor "may 'choose from a range of acceptable courses based on prevailing standards in the field'" *Id*. No evidence in the record suggests that the decision to order Tylenol (instead of Naprosyn), or that the lack of ice/heat packs

provided to Plaintiff, were unacceptable courses of treatment based on medical standards. Because no reasonable juror could infer that Dr. Siddiqui disregarded a substantial risk of serious harm to Plaintiff on February 26, 2019, Dr. Siddiqui is entitled to summary judgment.

**Wexford Health Sources, Inc.**

After February 26, 2019, Plaintiff contends that the fact that he only saw nurse practitioners-instead of a physician-is one reason why Wexford violated his Eighth Amendment rights. Plaintiff explains that Menard was severely understaffed, and the understaffing was a Wexford policy that caused delays in his treatment. To prevail in his §1983 claim against Wexford, Plaintiff must establish that his Eighth Amendment right to be free from cruel and unusual punishment was violated by 1) Wexford's express policy; 2) Wexford's "widespread and persistent practice that amounted to a custom approaching the force of law"; or 3) a Wexford "official with final policymaking authority." *Howell v. Wexford Health Sources, Inc*., 987 F.3d 647, 653 (7th Cir. 2021) (internal citations and quotations omitted). Plaintiff testified that a nurse told him, on two occasions, that "Wexford deliberately understaffs." This same nurse also told him that Wexford does not allow pain medication other than Tylenol or Ibuprofen to be dispensed. There is no evidence that these "policies" described by the nurse are either express Wexford policies or edicts from an official with final policymaking authority. Therefore, to establish that the understaffing and Tylenol/Ibuprofen policies were widespread practices, Plaintiff must provide evidence from which a jury could reasonably infer that "a series of violations" occurred, not "isolated acts of misconduct." *Id*. at 954 (internal citations omitted).

The evidence reflects that Plaintiff saw a nurse practitioner on four occasions. On the first occasion, he was promptly evaluated and sent to the emergency room following his fall. On the second occasion, the nurse practitioner noted that he was malingering and ordered Tylenol for his pain. On the third occasion, the nurse practitioner ordered physical therapy for him, and then at some other point (the record is unclear) a nurse practitioner ordered a steroid shot for him and a

muscle relaxer. To the extent that a nurse practitioner was deliberately indifferent to Plaintiff's condition at any of these visits because she did not order a narcotic pain medication for him, no evidence suggests that a Wexford widespread custom prevented her from doing so.

As for the understaffing, the evidence reflects that no medical doctor or nurse practitioner was available to see Plaintiff after he returned from the hospital until February 26, 2019 (five days after the injury). Viewing the evidence in the light most favorable to Plaintiff, the Court infers that Plaintiff did not have any pain medication during that time and therefore the delay could be considered a Constitutional violation. Regardless, this isolated incident is not sufficient to create a genuine issue of material fact regarding whether Wexford had a widespread and persistent practice of delays caused by understaffing. No evidence indicates that any of Plaintiff's other visits in the healthcare unit were delayed because of understaffing. Accordingly, Wexford is entitled to summary judgment.

## Conclusion

Defendants' Motion for Summary Judgment (Doc. 65) is GRANTED and Plaintiff's claims against them are DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter judgment accordingly. All pending deadlines and hearings are VACATED and all pending motions are MOOT.

**IT IS SO ORDERED.**

**DATED: September 29, 2022**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**